IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM J. MANSFIELD, INC., | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UDREN LAW OFFICES, P.C., | : | No. 18-03569 |
| *Defendants*. | : | |

# MEMORANDUM

PRATTER, J.                                                                                                  MARCH 22, 2019

William J. Mansfield Inc.'s moves for appointment of a receiver to supervise one of its clients, seeking, according to the Third Circuit Court of Appeals, "an heroic remedy." Maxwell v. Enter. Wall Paper Mfg. Co., 131 F.2d 400, 403 (3d Cir. 1942). Because the request here is more Loki than Thor, the motion is denied.

## BACKGROUND AND PROCEDURAL HISTORY

Mansfield provides legal advertising services to foreclosure law firms. Udren Law Offices, P.C. specialized in foreclosure work but is currently winding up after selling some or all of its "book of business" to another firm. Mansfield regularly prepared and placed advertisements on behalf of Udren Law, and Udren Law allegedly owes Mansfield $138,241.86 for those advertisements (across 86 invoices spanning from January 2018 to August 2018).[1]

---

[1] Udren Law counterclaims that Mansfield's invoices overcharged Udren Law for the services rendered by Mansfield. Udren Law estimates that its damages from the upcharges are $367,478.62.

1

One week after filing its complaint, Mansfield filed an emergency motion to appoint receiver. Doc. No. 6. The Court held a conference two weeks later on the receiver motion, after which the Court ordered that the motion would be held in abeyance pending a status update from the parties about their interest in a settlement conference. Doc. No. 11. The parties subsequently requested referral to a magistrate judge for a settlement conference, and so the Court stayed Udren Law's deadline to respond to the receiver motion. *See* Doc. Nos. 13, 17.

Before the parties could ever meet to discuss settlement, their irreconcilable differences caused the magistrate to cancel the conference. The Court then held another status conference, after which the stay of deadlines was lifted and the receiver motion was denied. *See* Doc. No. 22. In the Order denying the receiver motion, the Court observed:

> Mansfield has not carried its heavy burden. Mansfield concedes that it is "not aware of any fraudulent conduct having occurred" but nonetheless expresses concern that Udren's lack of transparency about its finances may portend future fraudulent conduct. Motion at 11. Mansfield's speculation does not weigh in favor of appointing a receiver. See FirstMerit Bank, N.A. v. Myrter, No. 2:15-CV-333, 2015 WL 3916673, at *7 (W.D. Pa. June 25, 2015) (conclusory allegations of fraud do not support appointment of a receiver).
>
> Further, Mansfield offers no concrete evidence that Udren is spending recklessly or dissipating assets, and Mansfield ignores that it continued to work with Udren for months (the allegedly unpaid invoices span from January, 2018 until August, 2018), despite Udren's failure to pay. See id. (no imminent danger where "the alleged defaults have been ongoing for over a year."); see also Lieberman [v. Corporacion Experienca Unica, S.A., 226 F. Supp. 3d 451, 473 (E.D. Pa. 2016)] (denying application for appointment of receiver where plaintiffs did not "point[] to any reasons to believe that [d]efendants are likely to destroy documents, or that the money to which [p]laintiffs believe they are entitled is likely to go missing"). Mansfield is not entitled to the extraordinary relief it seeks.

Id.

Now, having had the benefit of discovery, Mansfield renews its request to appoint a receiver to conduct the wind-down affairs of Udren Law.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 66 provides that the Federal Rules "govern an action in which the appointment of a receiver is sought[.]" "The Court should exercise its power to appoint a receiver sparingly, with caution and circumspection, and only in an extreme case under extraordinary circumstances, or under such circumstances as demand or require summary relief." Resh v. Bortner, No. 16-02437, 2016 WL 4138638, at *2 (E.D. Pa. Aug. 3, 2016) (citation and quotation omitted). The plaintiff "bears a heavy burden to establish an actual need for a receiver." Republic of the Philippines v. Marcos, 653 F. Supp. 494, 496 (S.D.N.Y. 1987), aff'd sub nom. Republic of Philippines v. New York Land Co., 852 F.2d 33 (2d Cir. 1988).

There is no exact formula for determining whether appointment of a receiver is appropriate, but courts within the Third Circuit routinely consider the following familiar factors:

(1) the probability of the plaintiff's success in the action;

(2) the possibility of irreparable injury to the plaintiff's interests in the property;

(3) the inadequacy of the security to satisfy the debt;

(4) the probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim;

(5) the financial position of the debtor;

(6) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;

(7) the inadequacy of available legal remedies;

(8) the lack of a less drastic equitable remedy; and

(9) the likelihood that appointing a receiver will do more harm than good.

Lieberman v. Corporacion Experienca Unica, S.A., 226 F. Supp. 3d 451, 473 (E.D. Pa. 2016) (citation omitted); see also Mfrs. and Traders Trust Co. v. Minuteman Spill Response, Inc., 999 F. Supp. 2d 805, 816 (W.D. Pa. 2013) (stating same) (citations omitted).

## DISCUSSION

Mansfield argues that evidence uncovered in discovery supports appointment of a receiver. But nothing in Mansfield's renewed motion is sufficient to carry its heavy burden. Therefore, the Court will deny the motion.

### I. Factors for Determining Propriety of Appointing a Receiver

The Court addresses each of the nine Lieberman factors in turn.

**1. Mansfield's Likelihood of Success on the Merits**

Mansfield argues that it was not paid for work memorialized in a specific series of invoices. Udren Law does not appear to dispute that it did not pay Mansfield for the at-issue invoices. Instead, Udren Law argues (and alleges in its counterclaim) that Mansfield "up-charged" Udren Law by adding fees to invoices without itemizing those fees. Udren Law's opposition to the receiver motion does not discuss the "likelihood of success on the merits" factor, but the law firm's Answer suggests that the firm's defense for its failure to pay recent invoices will be based on Mansfield's alleged unclean hands. *See* Doc. No. 23 at ¶ 23.

Though neither Mansfield nor Udren discusses the merit (or lack thereof) of Udren Law's unclean hands defense (or any other argument Udren Law might make in opposing liability), the record does reflect that Mansfield was not paid for services rendered. As such, this case will likely turn on Udren Law's ability to prove its defense (rather than questions about whether Mansfield performed services as alleged), and so this factor weighs slightly in favor of appointing a receiver.

4

**2. Irreparable Injury**

Mansfield argues that its unpaid invoices constitute irreparable injury, without addressing caselaw stating that "monetary harm [is] insufficient to show irreparable injury[.]" Mfrs. and Traders Trust Co., 999 F. Supp. 2d at 826 (citing Acierno v. New Castle Cnty., 40 F.3d 645, 653 (3d Cir. 1994)); see also Goadby v. Philadelphia Elec. Co., 639 F.2d 117, 121 (3d Cir. 1981) ("Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate.") (quotation omitted). Because monetary harm is not considered to be an irreparable injury for these purposes, this factor weighs against appointing a receiver.

**3. Inadequacy of Security**

Although Mansfield lacks security for the amount owed, it is undisputed that Mansfield is, in any event, an unsecured creditor. This factor does not weigh for or against appointment of a receiver.

**4. Probability of Fraudulent Conduct**

Mansfield argues that Udren Law made improper payments to the firm's principal, Mark Udren, while Udren Law was winding up. Mansfield also argues that Udren Law improperly paid its employees during August, 2018 (while the firm was winding up), because "'a lot of [the employees] just stood around and did nothing' or worked to transition files to [the law firm that acquired Udren Law's book of business]." Mot. at 3. Udren Law responds that during its winding up, there was still work "to be accomplished and if Udren simply shut its doors, it would have created chaos for the hundreds of cases to be transitioned." Opp. at 2.

The Court agrees with Udren Law that neither the payments made to Mr. Udren nor the continued disbursement of salaries were, in and of themselves, evidence of fraud. After reviewing the attachments to Mansfield's motion, it appears that the disbursements paid to Mr. Udren were

(1) a previously owed distribution from the prior year, and (2) a repayment used to satisfy Mr. Udren's outstanding loans to the firm. Additionally, it was reasonable for the firm to continue paying its employees for one month, during which time it transitioned its accounts to another law firm. The Court is not persuaded that Mansfield has presented any evidence showing fraudulent behavior. To the contrary, the record shows that (1) in the period before Udren Law's insolvency, between January and July 2018, Udren Law paid Mansfield upwards of $210,000 (presumably for services unrelated to the at-issue invoices)—which is directly opposite of the narrative that Udren Law was preparing to take the money and run, and (2) once Udren Law began winding up, Mr. Udren lent the firm substantial funds to keep the firm afloat.[2] Udren Law's payments to Mansfield and the firm's handling of its winding up do not give rise to an inference of fraud. This factor weighs against appointing a receiver.

5. **Financial position of the debtor**

The parties do not dispute that Udren Law is insolvent. This factor supports appointing a receiver.

6. **Imminent Danger**

Mansfield characterizes Udren Law as a "self-dealing shell" but does not offer any evidence that Udren Law's position has changed since the start of this litigation or that Mr. Udren is in fact using the firm for his own benefit. Mot. at 6. As discussed above, the law firm's financials do not suggest impropriety, and Mr. Udren's decision to inject capital into Udren Law to keep the firm running suggests on its face that he was working to ensure that the firm functioned

---

[2] The attachments to Mansfield's motion suggest that between March 2018 and July 2018, Mr. Udren loaned Udren Law $475,000, moving his own funds to the business. Based on the record, only $43,000 (less than 10%) of that appears to have been repaid to Mr. Udren.

while winding up. There is no evidence that the firm was or is misusing assets or lining Mr. Udren's pockets. This factor weighs against appointing a receiver.

### 7. Inadequacy of Legal Remedies

As discussed above, Mansfield is seeking monetary damages. Consequently, Mansfield has adequate legal remedies. Moreover, the Federal Rules of Civil Procedure lay out procedures for post-judgment enforcement, and even if Udren Law proves to be judgment proof, Mansfield may then attempt to pierce the company's corporate veil and collect from Mr. Udren and any other members of Udren Law, subject to conventional legal procedures and principles. This factor weighs against appointing a receiver.

### 8. Lack of Less Drastic Equitable Remedy

Neither party discusses what effect, if any, this factor has or should have on the motion. The Court therefore will not consider this factor.

### 9. Balance of Harms

Mansfield argues in conclusory fashion that a receiver would do more good than harm. But Mansfield does not offer any analysis comparing the likely costs or timing issues associated with a receiver versus the amount Mansfield stands to gain. Though appointing a receiver could benefit Mansfield, Mansfield has not in any way demonstrated whether that benefit would outweigh the substantial costs and possible delay associated with receivership. This factor weighs against appointing a receiver.

## II. Mansfield Has Not Carried Its Burden

After reviewing each of the above factors, the Court concludes that Mansfield has not carried its heavy burden attendant to such "an heroic remedy." There is no evidence of fraud, no evidence of irreparable injury, and nothing to suggest that the benefits of appointing a receiver

7

outweigh the costs. The Court cannot appoint a receiver in any case simply because a plaintiff likely has a meritorious monetary claim against an insolvent defendant.

## CONCLUSION

For the foregoing reasons, the motion to appoint receiver is denied. An appropriate order follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE